J-S66019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KARL BREEDEN, | : | |
| | : | |
| Appellant | : | No. 11 MDA 2014 |

Appeal from the Judgment of Sentence Entered December 5, 2012,
In the Court of Common Pleas of York County,
Criminal Division, at No. CP-67-CR-0001269-2011.


BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:               **FILED DECEMBER 17, 2014**

Appellant, Karl Breeden, purports to appeal from the judgment of sentence entered following his convictions of multiple theft offenses.[1]  After careful review, we quash this appeal as untimely filed.

The trial court summarized the facts of this case as follows:

> The Commonwealth presented numerous witnesses to prove [Appellant's] guilt beyond a reasonable doubt to the Jury. This Court will address what it feels to be the most relevant facts and evidence revealed throughout the trial.

> Michael Yergo, the president and a majority shareholder of [Advance Industrial Services], testified that he hired [Appellant], along with the approval of Kris Mailey, the second majority shareholder and corporate vice president.  Contrary to

---

[1] We note that the caption in this matter, and the notice of appeal filed by Appellant, indicate that this appeal is from the order of the trial court entered on November 25, 2013.  However, as will be discussed in detail below, this appeal was not properly brought from that order.

[Appellant], Mr. Yergo testified that when he hired [Appellant] he never promised [Appellant] an ownership in the company, and he never gave [Appellant] a specific timeline in which that would occur. In the early 1990s, [Appellant] in fact became an owner of the company, along with Jim Heinrichs, when he received a 2% share in the company. [Appellant] began as the company's controller and then advanced to CFO, and he took charge of all the company's financial responsibilities. Mr. Yergo trusted [Appellant] with the finances of the company until [Appellant] was let go on June 8, 2010. Mr. Yergo explained that the company gave bonuses at year's end based on profitability, and he never gave [Appellant] permission to give himself bonuses in addition to his normal salary or calculated year-end bonus. Mr. Yergo approved two personal loans for [Appellant] -- $60,000 and $100,000 -- and he placed [Appellant] in charge of organizing a repayment schedule, as [Appellant] did with all company loans. [Appellant] never made a payment on these loans, even after signing a promissory note . . . . Despite being advised he was no longer allowed to take out company loans, [Appellant] took an additional $75,000 loan without permission of Mr. Yergo.

[Appellant] also signed the company's policy manual, which explained the vacation policy. Mr. Yergo never gave [Appellant] special permission to cash in vacation time beyond that to which he was entitled under company policy. [Mr.] Yergo further testified that [Appellant] did not have the authority to use his signature stamp for personalized checks. [Mr.] Yergo claimed he had no knowledge that [Appellant] was writing himself checks and using [Mr. Yergo's] signature stamp. Mr. Yergo only authorized his signature stamp to be used for company expenses and reimbursing any out-of-pocket expenses. Furthermore, [Mr.] Yergo testified that he approved all company bonuses, and no minority shareholder (like [Appellant]) would be authorized to take one without approval.

The Commonwealth also presented the testimony of Elaine Druck, who handled payroll for the company since 1993. Ms. Druck was aware of the vacation policy specifics and the possibility of payment to employees for unused vacation days. Ms. Druck testified that [Appellant] began sending her emails demanding cash for his vacation time. She explained that she

began [forwarding] these emails to her home address because they contradicted company policy, and she wanted to protect herself. Ms. Druck reviewed all these emails during trial and each payout made at the request of [Appellant]. She explained that [Appellant] received all these checks in addition to his normal salary. Ms. Druck further testified about the number and amount of bonus payments [Appellant] received, which exceeded the bonus payments to any other employee. From her experience with the company, Ms. Druck explained that she never processed bonus payments of this nature for any other A.I.S. employee. Ms. Druck also revealed the number of vacation hours [Appellant] cashed in from 2006 through 2010. Finally, Ms. Druck explained that [Appellant] directed her to stop tracking shareholder vacation, which [Ms. Druck] said she had been doing since she began her employment. [Ms.] Druck further stated she did not question [Appellant] because he was her boss at the time.

Barbara Lamer also testified for the Commonwealth during the trial. Ms. Lamer was hired as accounting manager, and at the time of trial, held the position of controller – [Appellant's] prior position. Ms. Lamer first testified about the company's general ledger account, which showed the company loan amounts specific to [Appellant]. Ms. Lamer next explained the payroll check history report, which shows every payroll check issued for each employee every week. This report documented every payment that [Appellant] received from 2006 through 2010, and provided the specific amount of additional bonus and vacation payments that [Appellant] received. After reviewing this report, Ms. Lamer testified that the total amount of vacation payments came to about $131,000, which she explained was not even close to a normal occurrence. Ms. Lamer then compared [Appellant's] salary with Jim Heinrich's salary, who received a similar salary as [Appellant]. Ms. Lamer then reviewed the W-2 information on both [Appellant] and Mr. Heinrich, and her testimony showed that [Appellant] reported a significantly higher gross income than his or Mr. Heinrich's salaried amount for any year from 2006 – 2010. [Appellant's] gross income was even higher than the owners' salaries. [Appellant] provided Ms. Lamer with the explanation that he had worked out a deal with the company to repay him for ownership that he was promised but never received.

Finally, [Appellant] testified during the defense's case in chief. [Appellant's] testimony offered an explanation as to why he was entitled to the money he received from the company. When first hired, [Appellant claimed] that he would need three things to leave his then-current position, which included: a salary at least equal to his current salary; 4 weeks vacation minimum; and ownership interest to increase by 1% per year beginning in 1994. [Appellant] had no written documentation of this proposed agreement with [either] Mr. Yergo or Mr. Mailey. [Appellant] received 2% ownership in the company by 1995, and [Appellant] was not issued any more stock until 2006, when he received an additional 1% ownership. [Appellant] testified that he did not leave the company because he trusted Mr. Yergo would follow through with his promises and make the situation right. Because of his discontent, [Appellant] emailed Mr. Yergo and requested a meeting to discuss a bonus, which was not to exceed $300,000. [Appellant] further testified that Mr. Yergo and Mr. Mailey were "very receptive" to the idea of this bonus. [Appellant] testified that he was entitled to the money he took pursuant to the undocumented, pre-employment agreement and the bonus agreement with the majority shareholders.

Trial Court Opinion, 3/26/14, at 3-6 (citations omitted).

In addition, the trial court summarized the procedural history of this case as follows:

[Appellant] was found guilty by a jury of numerous theft offenses on August 13, 2012; those charges were Forgery under 18 Pa.C.S.A. § 4101(a)(1), Theft by Deception under 18 Pa.C.S.A. § 3922(a)(1), Theft by Unlawful Taking under 18 Pa.C.S.A. § 3921(a)(1), and Theft by Receiving Stolen Property under 18 Pa.C.S.A. § 3925(a). The jury further found that the loss to the victim, Advance Industrial Services, was $2,000 or more. On August 23, 2012, [Appellant] filed Post-Verdict Motions that [the trial court] denied generally on September 17, 2012. [The trial court] sentenced [Appellant] on November 30, 2012, and during sentencing, the Court heard additional testimony and argument regarding restitution. On December 4, 2012, [the trial court] set restitution in the amount of

-4-

$377,701.00. [Appellant] then filed a Post Sentence Motion/Motion to Set Restitution/Motion to Set Court Costs on December 20, 2012. As a result of this motion, a hearing was scheduled for February 19, 2013, on the matter of restitution.

On December 11, 2012, [Appellant] filed a Notice of Appeal with the Superior Court. However, the appeal in this matter was discontinued on December 31, 2012, after [Appellant] filed a Praecipe to Discontinue the Appeal due to the Motion for Restitution that was still pending with this Court.

On February 19, 2013, this Court held a restitution hearing during which additional testimony and evidence was presented. As a result, this Court ordered that the trial transcripts be made available to counsel. Counsel was ordered to file memoranda regarding their positions as to restitution within 60 days of receiving the transcripts. [Appellant], who was joined by the Commonwealth, filed a Motion to Extend Time to file the restitution memorandum due to the extensive record and the complexity of the issues. [The trial court] then extended the filing deadline to July 30, 2013. The Commonwealth then requested a further extension of time, and [the trial court] again extended the filing deadline to August 9, 2013. The Commonwealth in fact filed its memorandum by August 9, 2013.

Trial Court Opinion, 3/26/14, at 1-3 (citations omitted).

On November 25, 2013, the trial court entered an order adjusting the amount of Appellant's restitution to $362,609.28. This appeal followed.

Appellant presents the following issues for our review:

1. Whether the trial court erred when it denied the Motion to Dismiss the conviction for forgery pursuant to Section 4101(a)(1)?

2.a. Whether the trial court erred when it denied the Motion Challenging the Weight of the Evidence as to Theft By Deception – False Impression pursuant to Section 3922(a)(1)?

2.b. Whether the trial court erred when it denied the Motion Challenging the Weight of the Evidence as to the Charge of Theft By Unlawful Taking – Removable Property pursuant to Section 3921(a)?

2.c. Whether the trial court erred when it denied the Motion Challenging the Weight of the Evidence as to the Charge of Receiving Stolen Property pursuant to Section 3925?

3. Whether the trial court erred when it denied counsel's objection to the Commonwealth presenting rebuttal witnesses?

4. Whether the evidence presented at trial was insufficient as to the charges of Forgery; Theft by Deception; Receiving Stolen Property; and Theft by Unlawful Taking?

5. Whether the trial court erred when it partially denied the Motion to Set Restitution, specifically, when the court included $47,200.00 as part of the restitution from the alleged, forged checks which was already part of the "unauthorized vacation payments" and was also a part of the settlement agreement reached by the parties prior to the criminal charges being filed?

Appellant's Brief at 4.

As a prefatory matter, we note that the Commonwealth, in its brief, presents an argument that this appeal is untimely because the notice of appeal has been filed late. Commonwealth's Brief at 3-5. Thus, before we review the issues presented by Appellant, we must address the timeliness of this appeal because it appears that Appellant filed the instant notice of appeal beyond the period permitted by law.

The question of timeliness of an appeal is jurisdictional. **Commonwealth v. Moir**, 766 A.2d 1253, 1254 (Pa. Super. 2000). Time limitations on appeal periods are strictly construed and cannot be extended

as a matter of grace. ***Commonwealth v. Perez***, 799 A.2d 848, 851 (Pa. Super. 2002) (citing ***Commonwealth v. Hottinger***, 537 A.2d 1, 3 (Pa. Super. 1987)). ***See also*** Pa.R.A.P. 105(b) (stating that, although an appellate court may enlarge the time prescribed in the rules of appellate procedure for good cause shown, the court may not enlarge the time for filing a notice of appeal).

The time limit for the filing of challenges to a judgment of sentence is set forth in the Judicial Code as follows:

> **§ 5571. Appeals generally**
>
> **(a) General rule.—**The time for filing an appeal, a petition for allowance of appeal, a petition for permission to appeal or a petition for review of a quasi-judicial order, in the Supreme Court, the Superior Court or the Commonwealth Court **shall be governed by general rules**.  No other provision of this subchapter shall be applicable to matters subject to this subsection.

42 Pa.C.S. § 5571(a) (emphasis added).

The relevant rules of appellate procedure promulgated by the Pennsylvania Supreme Court provide as follows:

> **Rule 902.  Manner of Taking Appeal**
>
> **An appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal).**  Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to

the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902 (emphasis added).

**Rule 903.  Time for Appeal**

**(a) General Rule.**  Except as otherwise prescribed by this rule, **the notice of appeal** required by Rule 902 (manner of taking appeal) **shall be filed within 30 days after the entry of the order from which the appeal is taken.**

Pa.R.A.P. 903(a) (emphasis added).

In addition, we are mindful that Pa.R.Crim.P. 720 addresses post-sentence procedures.  Specifically, Pa.R.Crim.P. 720(A) provides that "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence."  Pa.R.Crim.P. 720(A)(1).  Rule 720 further provides as follows:

(2) If the defendant files a **timely** post-sentence motion, the notice of appeal shall be filed:

(a) within 30 days of the entry of the order deciding the motion;

(b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion; or

(c) within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion.

Pa.R.Crim.P. 720(A)(2) (emphasis added).  However, "[i]f the defendant does not file a timely post-sentence motion, the defendant's notice of appeal

shall be filed within 30 days of imposition of sentence, ...'" Pa.R.Crim.P. 720(A)(3).

In **Commonwealth v. Dreves**, 839 A.2d 1122 (Pa. Super. 2003) (*en banc*), this Court offered the following additional explanation, which we find pertinent:

> From the above, it can be seen that the time for filing an appeal can be extended beyond 30 days after the imposition of sentence only if the defendant files a timely post-sentence motion. The Comment to Rule 720 emphasizes this point as follows: "If no timely post-sentence motion is filed, the defendant's appeal period begins to run from the date sentence is imposed." Thus, where the defendant does not file a timely post-sentence motion, there is no basis to permit the filing of an appeal beyond 30 days after the imposition of sentence. This interpretation of Rule 720 is amply supported by this Court's recent decision in **Commonwealth v. Bilger**, 803 A.2d 199 (Pa. Super. 2002), *appeal denied*, 572 Pa. 695, 813 A.2d 835 (Pa. 2002) in which we stated:
>
> > As can be readily observed by reading the text of Rule of Criminal Procedure 720, ordinarily, when a post-sentence motion is filed an appellant has thirty (30) days from the denial of the post-sentence motion within which to file a notice of appeal. However, by the explicit terms of Pa.R.Crim.P. 720(A)(2), the provision allowing thirty days from the denial of post-trial motions is contingent upon the timely filing of a post-trial motion.
>
> **Bilger**, 803 A.2d at 201. We further opined that "in order for the denial of post-sentence motions to become the triggering event, **it is necessary that the post-sentence motions be timely filed**. Second, absent a timely filed post-sentence motion, the triggering event remains the date sentence is imposed." **Id**. at 202 (emphasis added).

***Dreves***, 839 A.2d at 1127. Therefore, "[f]or purposes of triggering the appeal period, [the] filing of an untimely post-sentence motion is equivalent to a complete failure to file a post-sentence motion." ***Bilger***, 803 A.2d at 202.

Here, our review of the record reflects the following. On August 13, 2012, a jury convicted Appellant of the crimes stated above. On November 30, 2012, the trial court sentenced Appellant to a term of incarceration of one year less one day to two years less one day for the conviction of theft by deception and a concurrent term of probation of ten years for the conviction of forgery. In an order dated December 4, 2012, the trial court directed Appellant to make restitution in the amount of $377,701.00. The record further reflects that the restitution order was docketed on December 5, 2012, and notice of the order was sent to the parties on December 6, 2012. Thus, assuming for the sake of argument that the ten-day time period for the filing of a post-sentence motion began when notice of the restitution order was sent on December 6, 2012, Appellant's post-sentence motion was due on or before December 17, 2012.[2]

---

[2] Appellant needed to file his post sentence motion by Monday, December 17, 2012, because December 16, 2012, was a Sunday. ***See*** 1 Pa.C.S. § 1908 (stating that, for computations of time, whenever the last day of any such period shall fall on Saturday or Sunday, or a legal holiday, such day shall be omitted from the computation).

However, the record further reflects that Appellant did not file his post-sentence motions until December 20, 2012. Because Appellant's post-sentence motion was untimely filed, it is the equivalent of a complete failure to file a post-sentence motion. *Bilger*, 803 A.2d at 202. Thus, Appellant's untimely post-sentence motion did not toll the time period for filing a direct appeal. Accordingly, in the best case scenario for Appellant, his appeal period began to run on the date that notice of the restitution order was mailed, *i.e.*, December 6, 2012, and the instant notice of appeal had to be filed within thirty days, or on January 7, 2013.[3] However, the instant notice of appeal was not filed until December 23, 2013, over eleven months late. Hence, this appeal must be quashed.

Moreover, we are cognizant that the trial court overlooked the untimely filing of Appellant's post-sentence motion and addressed that motion, which initiated the instant appeal. However, such action by the trial court does not alter our decision that this appeal is untimely and must be quashed.

Where a trial court considers an untimely post-sentence motion, we have observed the following:

> [A]bsent the additional step by the trial court of vacating the sentence within the thirty-day period and prior to the taking of

---

[3] Appellant was required to file the instant notice of appeal by Monday, January 7, 2013, because January 5, 2013, was a Saturday. 1 Pa.C.S. § 1908.

an appeal, the court's decision to do so should not affect the running of the appeal period and a potential appellant will still be obligated to file an appeal within thirty days of imposition of sentence. *See Commonwealth v. Quinlan*, 639 A.2d 1235 (Pa. Super. 1994). To invoke a rule that ties the start of the appeal period to the trial court's subsequent decision to either consider the merits of an untimely filed post-sentence motion, or the trial court's decision to equate an untimely petition as no petition, would add uncertainty to an otherwise certain rule and add confusion where there need be none.

*Bilger*, 803 A.2d at 202 n.5.

Likewise, in *Dreves*, we held that an untimely post-sentence motion did not extend the time period for filing an appeal from the judgment of sentence. We acknowledged in *Dreves* that the trial court did have the power to grant the filing of a post-sentence motion *nunc pro tunc* within thirty days of the judgment of sentence, but specifically ruled that the fact that the trial court entertained and denied the untimely motion did not toll the appeal period. We explained that unless a defendant specifically files a motion seeking permission to file a post-sentence motion *nunc pro tunc* and unless the trial court expressly grants the request within thirty days of the imposition of the sentence, the appeal period continues to run. *See Dreves*, 839 A.2d at 1128-1129 (stating that "[t]he trial court's resolution of the merits of a late post-sentence motion is no substitute for an order expressly granting *nunc pro tunc* relief").

In this case, even though the trial court considered the merits of the untimely post-sentence motion, the trial court failed to acknowledge that the

post-sentence motion was untimely. Moreover, the trial court did not expressly grant Appellant permission to file a post-sentence motion *nunc pro tunc*. Therefore, we are constrained to conclude that the instant notice of appeal was untimely filed and quash this appeal.

Appeal quashed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2014